159 So. 700

## CHILES v. STATE.
### 7 Div. 93.

Court of Appeals of Alabama.
Feb. 26, 1935.

E. G. Pilcher, of Gadsden, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

From a judgment of conviction for grand larceny, this appeal was taken.

Appellant was charged, in count 1 of the indictment, with the offense of feloniously taking and carrying away two bales of cotton, of the value of $115, the personal property of J. H. Watson. The judgment of conviction was had upon that count.

The corpus delicti was sufficiently established by the state's evidence, and this evidence also tended to connect this appellant with the commission of the offense complained of. The appellant, however, strenuously denied any knowledge of, or participation in, the larceny of the cotton, and offered numerous witnesses whose testimony tended strongly to show that at the time the crime was committed he was at another place, some fifty miles or more away and in another county. If this evidence was true and believed by the jury beyond a reasonable doubt, this appellant could not have been the person who stole the cotton in question. This, and all other questions of fact, were for the jury to determine.

Appellant insists that innumerable errors were committed pending the trial of this case, and the insistences in this connection are specifically designated and pointed out in his assignment of errors, 45 in number.

The law contemplates and provides that every person charged with crime shall have a fair and impartial trial, free from error calculated to injure his substantial rights. In Patterson v. State, 202 Ala. 65, 79 So. 459, 462, the Supreme Court said: "The guilty, as well as the innocent, have a right to be tried in accordance with the law of the land. The innocent ought not to be punished, and the law does not intend or provide that they shall be punished; and as to the guilty, the law provides that such shall not be punished except in the mode and manner provided by the law."

Before entering upon the trial the defendant moved the court for a continuance on the ground of his illness, and upon other grounds not necessary to discuss; and in sup-

port of the motion as to his sickness offered the testimony of two reputable physicians whose testimony was in accord and to the effect that the defendant was unable to stand trial, as he was suffering with acute appendicitis and had been for several days, and that he was confined to his bed as a result of their lers. Granting or refusing continuances of ..ials is largely within the sound discretion of the trial judge, and his rulings in this connection are not revisable unless it appears that a gross abuse of the discretion is shown. Jarvis v. State, 220 Ala. 501, 126 So. 127. Here, however, we need not decide this question, for in all probability it will not arise upon another trial of this case.

■ Every person on trial charged with the commission of a criminal offense may offer evidence of his previous good character, not only where doubt exists on the other proof, but even to generate a doubt of his guilt. Evidence of character of the accused must be confined to the time of, and anterior to, the commission of the offense charged, and a witness to be competent to testify to a defendant's general character must possess the means of knowing what it is before the commission of the offense, and a witness to character cannot speak of particular acts, of the person inquired about, but is confined to a statement of general reputation in the neighborhood in which he lives, or is known. The rule applies with equal force to *original* and *rebutting* testimony. The issue is good or bad repute, and to this each party is confined. So, also, the *cross-examination* of a character witness must be conducted within the limits of this inquiry. The cardinal rule, applicable to cross-examination, is that while it can take a wider range in the case than was covered by the examination in chief, and even elicit facts not before in evidence, it must still relate to facts in issue, or relevant, or deemed to be relevant thereto. In other words, character, whether good or bad, can only be proved by general reputation; evidence of particular acts or conduct is inadmissible, both on direct and cross examination, though in the latter greater latitude is allowed than in the former. Thompson v. State, 100 Ala. 70, 14 So. 878.

The defendant availed himself of the privilege of proving his general good character and offered a large number of witnesses for this purpose, all of whom testified, on direct examination, that the general character of the defendant was good. Appellant insists that on the cross-examination of practically all of these witnesses, the court committed reversible error, in allowing the solicitor, over de-

fendant's objection and exception, to transcend the bounds of legitimate cross-examination. We have examined each of these insistences and find that a number of them must be sustained under the rules hereinabove announced.

■ Defendant's witness T. E. Camp testified: "I am Town Marshal of Boaz. I have known defendant some five or six years. I know his general character, and it is good." It was error for the court to allow the solicitor to ask him on cross-examination: "I believe you helped to make arrest of him, didn't you? Did you or did you not arrest him with two bales of cotton on his truck?" It is true the witness answered: "I don't know a thing about that." However, the inquiry itself has no connection with or relation to the charge in this case, but referred to a supposed or conjectured particular act or conduct on a different occasion. The inquiry tended to cast opprobium upon the accused and was a direct infringement of the announced rule in this connection. Other questions to this witness were of the same import and were violative of the rule.

■■ The rulings of the court in connection with the cross-examination of defendant's witness Presley Duckett were error also. This witness testified: "I have known Jim Chiles fifteen or twenty years. He is a man of good character." On cross-examination of this witness the solicitor was permitted to make inquiry relative to other and different specific offenses from the offense with which he was here charged. The general and well-recognized rule is that in a prosecution for a particular offense evidence tending to show defendant guilty of another and distinct offense, disconnected with the crime charged, is inadmissible; the manifest purpose of this rule being to prevent prejudice to the defendant in the minds of the jury by the introduction of evidence of offenses for which he is not indicted, to which he is not finally to answer, and building up a conviction on inferences of guilt from the fact that he had committed another offense. The justice, fairness, and reason for the rule are apparent, and as said in the case of Gassenheimer v. State, 52 Ala. 313: "A strict adherence to it is necessary to prevent criminal prosecutions from becoming instruments of oppression and injustice." The statement by the court to the jury, explanatory of the rulings complained of, in no manner counteracted the hurtful results of said rulings, or the unfavorable and prejudicial impressions upon the jury by the injection of these erroneous matters.

■ J. H. Phillips, defendant's witness, testified: "Have known Jim Chiles about twenty-eight years. His character is good." It was error for the court to permit the solicitor to ask him: "Would you tell this jury that a man that is a cotton thief is a man of good character?" This question was improper, and that it was highly prejudicial cannot be questioned. The estimate of the solicitor as to the accused should not be injected into a case in this manner, for the fundamental law provides and guarantees to every person on trial charged with a criminal offense, a fair and impartial trial, and however strong the solicitor may have been in his belief that the accused was a cotton thief, such belief on his part should not be permitted to go to the jury as was here allowed. In this case, as in all criminal cases, the accused was presumed to be innocent, and this presumption attended him throughout the trial, as a matter of evidence, or until overcome by evidence sufficient to satisfy the jury of his guilt beyond a reasonable doubt and to a moral certainty. In the case of Way v. State, 155 Ala. 52, 46 So. 273, 274, it will be noted that the Supreme Court reversed the judgment of conviction on a point very similar to (but not half so objectionable to) the question involved here. In that case the court held: "It was improper to ask one who had testified to accused's good character whether one guilty of getting drunk and going to disreputable places and fighting would have a good character; his 'reputation' being the subject of inquiry."

■ The court committed error also in permitting the solicitor to ask the state's witnesses Burns and Brooks the question: "You were losing a lot of cotton down there?" These rulings were so manifestly error no discussion in this connection is necessary.

Practically every exception reserved to the rulings of the court, on the argument of the solicitor to the jury, were well taken. We need not prolong this opinion by a detailed discussion of these several points of decision.

The defendant's motion for a new trial should have been granted. There were sixty-five grounds upon which the motion was predicated. A large number of these grounds of the motion are sustained by the record. Other insistences of error are presented, but to discuss each of them in detail would unnecessarily prolong this opinion. Upon another trial of this case many of these questions should and probably will be eliminated.

Reversed and remanded.