217 So.2d 536

Earline **NICKERSON**

v.

**STATE of Alabama.**

**3 Div. 363.**

Supreme Court of Alabama.

Jan. 2, 1969.

Rehearing Denied Jan. 23, 1969.

———◆———

N. T. Braswell, III, of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

BLOODWORTH, Justice.

This is an appeal by Earline Nickerson from a robbery conviction in the circuit court of Montgomery County, Alabama. The defendant was indicted by the Montgomery County Grand Jury and at her arraignment pled not guilty and not guilty by reason of insanity. Trial was set for August 1, 1967. At the trial, defendant was convicted and sentenced to a term of twenty-five years in the State penitentiary.

Defendant argues three grounds for a reversal. The first relates to the trial court's refusal to grant a motion to quash; the second relates to the court's refusal to grant a continuance; and, the third and fourth pertain to the court's refusing certain requested charges.

Before trial, defendant filed a motion to quash the venire. The motion alleges that the same special and regular jurors composing the venire in the instant case were present for the trial of State of Alabama v. Walter Eady (a companion case which was tried first), were qualified for that case and some heard evidence therein. And also, because of adverse newspaper publicity. The motion concludes the defendant could not receive "a fair and impartial trial by a jury selected from this venire." Specifically, defendant alleges that during the trial of Walter Eady, some members of her venire were present in the courtroom and heard the testimony of Clara Smiley, the victim of robbery, and the principal State's witness in both trials. The trial court denied the motion to quash.

Immediately preceding the selection of the jury in this case, the attorneys appeared in the trial judge's chambers, and it was stipulated for the record that there were "eight to ten" jurors present in the courtroom while Clara Smiley was giving testimony during the trial of Walter Eady. The court then permitted defendant to introduce into evidence a newspaper article from The Montgomery Advertiser of Tuesday, August 1, 1967, entitled "50-year Sentence Given to Torturer of Woman."

The newspaper article, by name, did relate the appellant to the Eady trial and the crime. It contained some comments of the district attorney in the Eady case:

"District Attorney David Crosland called the crime 'one of the most brutal and fiendish acts ever performed in this county.' "

and from the district attorney's argument the following was published:

"The punishment should fit the crime and if there is a crime anywhere that de-

serves the death penalty, this is it. A man like this should be taken out of society."

The trial judge was quoted in the article as follows:

"I am convinced by the evidence that you are guilty, and if I had been on the jury I think I would have asked for the maximum penalty (death)."

There was also comment on the jury's request that no parole consideration be given Eady in connection with the sentence of 50 years. A short synopsis of the evidence was presented and mention made of Eady's criminal record of some 52 violations ranging from grand larceny to narcotics.

A motion for continuance based on the same grounds as those contained in the motion to quash was denied.

Prior to striking the jury, counsel for defendant ascertained that seventeen of the prospective jurors had "read the publicity given to the case yesterday * * *."

In qualifying the jury, *the court asked that all jurors who had heard any part of Walter Eady's case to stand up*. Ten of the venire responded in the affirmative, *and these were excused by the court*.

The State's evidence on the trial tended to show that the appellant and Walter Eady, her common-law husband, went to Clara Smiley's home on Saturday evening March 19, 1966, at 5:30 or 6:00 p. m. They obtained entrance to the house by asking Clara for water. While inside, Walter Eady began to hit and beat Clara with his fist in an attempt to get Clara to tell him where her money was located. When Clara told him that she had no money, Eady tied her hands and one leg to a bedpost. All during this time, the appellant was standing by with an ax in her hand.

After Clara was tied up, Eady heated a hot poker and burned her along the arm. He also placed ashes at her feet and put a burning cigarette in it. After torturing Clara, the two ransacked the house and stole, $6.00, an ax, smoothing iron, watch, and a clock. They left together.

Clara Smiley remained tied to the bed until 6:00 a. m. the following Sunday morning. At this time, she was found by a man who was on his way to work. He untied Clara and then called the police.

The defense sought to establish an alibi for appellant. A witness, Beatrice Barnes, testified that appellant and her common-law husband came to her boarding house on March 19, 1966 (a Saturday or Sunday she was unsure), and watched television from 3:30 to 10:00 p. m.

Appellant took the stand in her own behalf. She testified that she was not in Clara Smiley's house on the day of the robbery, and she further testified that she had never been there. She stated that on that day she and Eady went to Beatrice Barnes' home at 3:00 or 4:00 p. m., and watched television until about 11:30 p. m. However, she did testify that during that time her husband left to borrow a car from a friend.

After conviction by a jury, appellant filed motion for a new trial, and the same was continued by the trial court until it was denied March 28, 1968.

Appellant filed her notice of appeal, verified petition for appointment of counsel, and for a free transcript on appeal. An order appointing counsel and authorizing preparation of the transcript and filing of same was made by the trial court.

■ The first error argued is that the trial court committed reversible error in overruling appellant's motion to quash the trial venire.

*A challenge to the array or motion to quash the venire will not be sustained unless it is alleged and proved that the whole venire was tainted with prejudice.* Stover v. State, 204 Ala. 311, 85 So. 393; Lane v. State, 40 Ala.App. 174, 109 So.2d 758.

In Lane v. State, supra, is the following:

"* * * The scattergun tactic of making a challenge to the array (iii, Bl. Com. 359; People v. Izzo, 14 Ill.2d 203, 151 N.E.2d 329 [89 A.L.R.2d 187]), unless alleging and proving the whole venire tainted with prejudice, was ruled out by Anderson, C. J., in Stover v. State, 204 Ala. 311, 85 So. 393. See also Tyler v. State, 19 Ala.App. 380, 97 So. 573, and Dorsey v. State, 36 Ala.App. 376, 56 So. 2d 390."

This court, in Stover v. State, supra, stated as follows:

"* * * It would have been good grounds for challenge for cause of any jurors who may have tried the said [companion case] * * * but the fact that all or some of the members of the general venire were present in court when [the companion case] * * * was tried did not afford a revisable ground for quashing the venire and refusing to continue the case. Moreover, the action of the trial court in refusing to continue the cause was discretionary. * * *"

The record shows the trial court proceeded to qualify the jurors in groups of five. While qualifying each group, he asked whether or not the newspaper coverage, or the fact that appellant's accomplice was tried the day before would in any way influence their decision. No member of the venire indicated that they would be influenced by these facts.

The trial court did not err in denying appellant's motion to quash the venire.

The second error of which defendant complains is denial of appellant's motion to continue the case because of the pretrial publicity and the presence of the veniremen in the courtroom during the trial of the companion case.

The granting or denying of a continuance is in the sound discretion of the trial court. Bosarge v. State, 273 Ala. 329, 139 So.2d 302; Crowden v. State, 41 Ala.App. 421, 133 So.2d 678; Stover v. State, supra; Riley v. State, 209 Ala. 505, 96 So. 599;

Brown v. City of Tuscaloosa, 12 Ala.App. 608, 67 So. 780.

The court's ruling on granting or denying a new trial is not to be disturbed save for gross abuse. Goldin v. State, 271 Ala. 678, 127 So.2d 375; Haynes v. State, 40 Ala.App. 106, 109 So.2d 738, cert. den. 268 Ala. 546, 109 So.2d 746. We find no abuse of discretion here.

It is the duty of the trial court to make certain that a defendant can, and will, obtain a fair and impartial trial by an unbiased and unprejudiced jury. But, the burden is on defendant to show to the reasonable satisfaction of the trial court that a fair and impartial trial and an unbiased and unprejudiced verdict cannot reasonably be expected. Goldin v. State, supra; Patton v. State, 246 Ala. 639, 21 So.2d 844; Riley v. State, 209 Ala. 505, 96 So. 599. We think the court below complied with its duty in this case. We consider what this court said in Goldin v. State, supra, 271 Ala. at page 680, 127 So.2d at page 377, as being determinative of this issue:

"The newspaper articles (article) were (was) written with reference to the trial and it can be expected that the general public was interested about the case. *We are left unconvinced, nor was it made apparent to the trial court, that the appellant could not, on account of these (the) newspaper articles (article), have had a fair trial * * *.*" [Emphasis supplied.]

There is no analogy between the case at bar and the cases of Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663; Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; Shepherd v. Florida, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740, which contain repeated, extensive and in depth pre-trial publicity to which the defendants in those cases were subjected.

Defendant also complains of refusal of her requested charges VIII and X, which are as follows:

"VIII—The Court charges the jury that if you are reasonably satisfied from

the evidence in this case that the defendant Earlene Nickerson, was at some other place and was not at the house of Clara Smiley at the time and place testified to by the State's witnesses, then under the law it will be your duty to find the defendant not guilty."

"X—The Court charges the jury that if the defendant, Earlene Nickerson, shows to your reasonable satisfaction that she was not at the house of Clara Smiley or that she was at some other place at that time, so that she could not have possibly been there at the time of the alleged crime, then I charge you you cannot find for the State."

We agree with defendant that she is entitled to have the jury charged on her defense of alibi under the evidence. But, the trial court gave the defendant's requested charge IX, which is as follows:

"IX—The Court charges the jury that if after considering all the evidence, you have a reasonable doubt as to the presence of the defendant, Earlene Nickerson, near the scene of the alleged crime, then you should acquit the defendant."

We are of the opinion that given charge IX substantially covered the alibi defense, and that requested charges VIII and X were refused without error.

We do not want to be understood as approving the giving of charges VIII and X, nor of holding that refusing them would constitute reversible error if not covered by the oral or other given charges. We are not called upon to rule on these issues.

We have carefully examined the entire record to determine if there is error therein which might have adversely affected the substantial rights of the accused whether called to our attention or not. We find none. Therefore, the case is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.