The grand jury of Jefferson County indicted Leander Lee Johnson for the robbery of Susan Richardson by taking some $350.00, wine and beer from her person and by putting her in fear, etc. The jury returned a verdict of guilty as charged and fixed punishment at forty years imprisonment. The trial court then set sentence accordingly.
Mrs. Susan Richardson testified that she was working at the Road Runner Convenience Store # 2, located at 1725 18th Street, South, in Homewood, Alabama, between the hours of 3:00 p.m. and 11:00 p.m. on October 27, 1976. Shortly after 7:00 p.m. that night, while Mrs. Richardson was on duty, two black males entered the store, selected two packages of beer and a half-gallon of wine from the cooler, and walked to her location at the cash register. At this point, one of the men pointed a gun at her and demanded the money from the cash register and from the safe in the back of the store. Mrs. Richardson stated that, in response to their demands, she opened the cash register, stepped back from it, and told the men they could have what they wanted. The man with the gun came around the counter and told the witness that he wanted the money kept in the back of the store. Mrs. Richardson testified that she and the man with the gun went to the back room of the store where he obtained from her approximately $50.00 in coins which was customarily kept in a small floor safe. The man with the gun first told Mrs. Richardson to lie down in the back room, but then summoned her to the counter to package the beer and wine. Upon returning to the cash register, Mrs. Richardson noticed that all of the twenty dollar bills and the ten dollar bills had been removed from the cash register, while the five dollar bills and one dollar bills remained therein. Having packaged the merchandise, Mrs. Richardson then took the remaining currency from the drawer and, pursuant to instructions, placed it in the sack with the beer and wine. Mrs. Richardson explained that in removing the currency from the cash register, she activated a silent police alarm located in the drawer. *Page 1162 
Sometime during the occurrence of these events, Mr. Avinger, a regular customer, entered the store to make a purchase. Unaware that a robbery was in progress, Mr. Avinger went to the back of the store, selected a carton of milk and walked to the cash register, stopping approximately three or four feet from it. He did not move from there until the robbers had exited. Mrs. Richardson further testified that the two men instructed her to return to the back room and lie down on the floor.
Mrs. Richardson positively identified the appellant as one of the two men who perpetrated the robbery. She noted that the appellant stood off to the side during the robbery, functioning primarily as a "lookout." The other robber held the pistol, a chrome revolver. Mrs. Richardson never saw the appellant with a gun.
Shortly after the two men left the store, Mrs. Richardson heard eight to ten gunshots outside the store. Thereafter, a wounded police officer stumbled into the store. Mrs. Richardson observed that the officer was bleeding from his head and shoulder. She estimated that the entire sequence of events lasted about five minutes.
Mr. James Franklin Avinger then testified that he entered the convenience store on the night in question to purchase some milk. As he approached the cash register, he heard one of the two black males, standing in front of him at the counter, say, "Put it all in a sack" (R. p. 19). Mr. Avinger was unable to identify the appellant positively as one of the two robbers because his view of him was a profile view. Mr. Avinger's testimony confirmed that of Mrs. Richardson relating to the gunshots outside the store immediately after the two men exited. Upon seeing the wounded police officer enter the store, Mr. Avinger testified that he grabbed the officer and helped him sit down. Mr. Avinger stated that there was blood on the officer's face.
Officer Elbert Brooks testified that he was employed by the City of Homewood as a police patrolman and was on duty on October 27, 1976. He received a message that night at City Hall to proceed to the location of the Road Runner Convenience Store # 2. In accordance with standard procedures, Officer Brooks, upon arriving at the convenience store, turned off his headlights and waited outside the store in his patrol car while his partner covered the rear of the store. He observed two black males as they came out of the store, one of them carrying a grocery sack. As they walked from the store, Officer Brooks pulled up to them in his car so that when he stopped and got out of the car, the two men were directly in front of the patrol car. As he got out of his car, Officer Brooks drew his service revolver and shouted, "Hold it." In response, the man with the grocery sack (Johnson) attempted to flee while the other suspect remained in front of the patrol car. Again, Officer Brooks shouted, this time saying, "Halt, and I mean stop now" (R. p. 26). At this point the fleeing suspect, subsequently identified by Officer Brooks as the appellant, Leander Lee Johnson, turned and fired at him with a nickel-plated revolver. Simultaneously, the other suspect, also identified by Officer Brooks as Charles Leon Chambers, opened fire on him from his location in front of the patrol car. Officer Brooks testified that he fired five shots at the appellant, who fell saying, "I'm hit" (R. p. 27). Then Officer Brooks turned and fired one shot at Chambers. Officer Brooks stated that the appellant fired at him at least twice, missing both times. Chambers' gunfire wounded Officer Brooks in the shoulder, left arm, and above his eye. On hearing the gunshots, Officer Brooks' partner came from behind the store to give assistance. By this time the robbers had made their escape. Officer Brooks stated that he stumbled into the store after being shot and told Mrs. Richardson to call the paramedical squad. On cross-examination, Officer Brooks testified that, although it was dark outside at the time of the incident, the lighting from flourescent street lights was good.
Detective Sergeant Edward Allen McKenzie testified that he was employed by the City of Homewood and was assigned to *Page 1163 
investigate the robbery in question. His investigation ultimately resulted in the arrest of the appellant, Leander Lee Johnson, and of Charles Leon Chambers in the City of Mobile, Alabama, on November 4, 1976. The suspects had been taken into custody by the Mobile police. Sergeant McKenzie and Sergeant West subsequently transported the appellant and Chambers to Homewood by car on November 6, 1976. According to standard police procedures, the suspects were handcuffed and secured together in the back seat of the car which did not have a screen petition between the front and back seats. The officers were armed with their service revolvers and a shotgun which was held by Sergeant McKenzie during the trip. When the suspects were placed in the car to be transported to Homewood, Sergeant McKenzie advised them orally of their "Miranda rights." During the drive back to Homewood, the two suspects, without any threat, intimidation, coercion, or inducement, initiated a conversation with Sergeant McKenzie by inquiring of Sergeant McKenzie about the wounded officer. This conversation took place in the early part of the trip and lasted about ten to fifteen minutes. In this conversation, the appellant and his companion, Chambers, after being told that Officer Brooks was alive, stated, "Well, we did it in that case" (R. p. 51).
Chambers and Johnson were booked at the Homewood City Jail, on November 6, 1976, following their arrival from Mobile.
Two days later, November 8, 1976, Sergeant McKenzie had a second conversation with the appellant, Johnson. This took place at Police Headquarters with only Officer Huey being present with Sergeant McKenzie during the questioning. Prior to the initiation of any questioning, the appellant was read his "Miranda rights," Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694, and without any threat, intimidation, coercion, or inducement, being made or offered, the appellant gave a full confession concerning the robbery of the Road Runner Convenience Store on October 27, 1976, in Homewood, Alabama. This confession was dictated on tape in response to questions, then typed, and read over by the appellant, who then signed it in the presence of the two officers at 1610 hours, November 8, 1976.
Prior to its admission into evidence, the trial court excused the jury during the voir dire questioning while a proper predicate was laid. See Jackson v. Denno, 378 U.S. 368,84 S.Ct. 1774, 12 L.Ed.2d 908, and Duncan v. State, 278 Ala. 145,176 So.2d 840. The Miranda waiver form and the statement itself were designated as Exhibit 1, and then admitted into evidence.
Sergeant McKenzie also testified that the day after the robbery, Officer Brooks informed him that he had recognized Charles Leon Chambers at the time of the encounter outside the convenience store as the two men were leaving and that he gave him his name, and he selected the appellant's, Johnson's, photograph as being the other person involved in the robbery.
Sergeant McKenzie also stated that Mrs. Richardson identified Johnson from the photographs shown to her the next morning following the robbery.
George R. Carr, III, stated that he was Evidence Technician with the Homewood Police Department. Carr indicated that shortly after 7:00 p.m. on the night of October 27, 1976, he went to the Road Runner Convenience Store # 2 on 18th Street and there received a .38 caliber pistol, which contained four spent hulls, and that two of the chambers were empty. Mr. Carr indicated he received this pistol at the scene from one Walter Blocker, and that it had been in his care and custody since that time.
Walter Blocker stated he was Deputy District Attorney for Jefferson County and was in Homewood, Alabama, on the night of October 27, 1976. Blocker stated that he heard a noise of some tires squealing, some words spoken, and some pistol shots, and that he drove immediately to the Road Runner Convenience Store # 2 in Homewood. Blocker advised that he found a .38 caliber pistol and two six-packs of beer in a sack in an alley immediately across the street from the Road Runner Convenience Store. *Page 1164 
Blocker then identified the pistol from his initials on a marker and stated that he had delivered it to Officer Carr at the scene of the robbery. The pistol in question was then admitted into evidence.
The appellant did not testify, nor did he present any evidence at trial.
 I
Shortly before trial commenced, on April 19, 1977, appellant's counsel asked for a continuance, based on "pretrial publicity," which was denied. The colloquy is as follows (R. p. 5):
 "MR. SHULTS: Your Honor, we would like to move at this time for a continuance based on the pretrial publicity, I guess, concerning the other case in the newspaper.
 "THE COURT: Okay. That's denied. I would like to state that the publication was on about Page 40.
"MR. SHULTS: I'm not sure.
"MR. RUSSELL: Back in the back area.
 "THE COURT: I don't think this Defendant's name was mentioned.
"MR. SHULTS: No, sir, his name was not.
 "(Whereupon, proceedings were in recess until 4:10 P.M., at which time the following proceedings were had and done:)"
The granting or refusal of a continuance because of pretrial publicity is a matter within the sound discretion of the trial court. Nickerson v. State, 283 Ala. 387, 217 So.2d 536, andBosarge v. State, 273 Ala. 329, 139 So.2d 302.
The burden is on the movant to reasonably satisfy the trial court that an impartial jury cannot be had in the circuit court to which the indictment is returnable. Tiner v. State, 271 Ala. 254, 122 So.2d 738, and Dannelly v. State, 47 Ala. App. 363,254 So.2d 434, cert. denied, 287 Ala. 729, 254 So.2d 443.
As noted in Dannelly,, supra, "The passage of time cannot be ignored as a factor in bringing of objectivity to the trial."
Moreover, the record here fails to show any prejudicial influence on the venire here selected for trial. Turk v. State, Ala.Cr.App., 348 So.2d 878, and cases therein cited.
As shown by the colloquy, little pretrial publicity was given to this cause, and, in fact, the appellant's name was not mentioned. Clearly, the trial court's ruling was correct.
 II
The appellant contends that the trial court erroneously allowed Officer Brooks to testify concerning the shooting, which took place outside the Road Runner Convenience Store # 2 immediately following the robbery, as being evidence of an offense not involved in the robbery.
As shown by Mrs. Richardson's testimony, when she removed the several bills from the cash register, a silent alarm system was activated in the Homewood Police Department. Officer Brooks and his companion officer went to the scene where Officer Brooks remained outside the store and observed the men walking out with the package in hand. He then directed the two men to halt. He gave this command twice before the ensuing gunfire took place. We are of the opinion that Officer Brooks' testimony concerning the shooting outside the convenience store was properly admitted into evidence as being a part of one continuous criminal transaction, which commenced with the robbery inside the store. Parsons v. State, 251 Ala. 467,38 So.2d 209.
In cases of robbery, the jury is given a wide range of discretion in fixing the punishment. All of the details of one continuous criminal occurrence or adventure may be considered by the jury in passing upon the culpability, the wickedness, and depravity of the crime for which the party is being tried. This evidence was properly admitted. Jackson v. State, 229 Ala. 48,155 So. 581, and Witherspoon v. State, Ala.Cr.App.,356 So.2d 743, 6 Div. 603, Feb. 21, 1978. *Page 1165 
 III
The appellant finally contends that the trial court erred in allowing the custodial statement of the appellant to be admitted in evidence and read to the jury, asserting that same was coerced.
The record here does not support such an assertion. To the contrary, the appellant and his companion, Chambers, were given a "Miranda warning," first, by the two officers before being placed in their vehicle in Mobile, Alabama, before the return trip to Homewood. Shortly after leaving Mobile, a brief conversation took place wherein Johnson and Chambers admitted their participation orally after inquiring about Officer Brooks' condition (R. p. 51).
The two men were delivered to the Homewood City Jail on November 6, 1976, following a nonstop trip from Mobile. Johnson was not interrogated until two days later, following a brief conversation with Sergeant McKenzie and Officer Huey in the office of the Homewood Police Department. This occurred following a full, second "Miranda warning," and, without any threats, intimidation, coercion, or inducement, the appellant gave a full statement, admitting his participation in the robbery in question. There is no contention here that the appellant was denied either food or rest. This is not a case of a long or protracted examination of an accused being held incommunicado and subject to threats or abuse. The record in this cause is entirely to the contrary. The trial court so understood and determined, and such is borne out by the record itself. We are of the opinion that the trial court's determination as to the voluntariness of the appellant's statement was correct. Luschen v. State, 51 Ala. App. 255,284 So.2d 282; Crowe v. State, 54 Ala. App. 121, 305 So.2d 396, andBass v. State, 55 Ala. App. 5, 312 So.2d 576.
Our careful review indicates that confession here admitted into evidence was not induced by any type of threat or promise, express or implied, nor was there any inducement which would operate to produce hope or favor, or coercion which would render such confession inadmissible. See Guenther v. State,282 Ala. 620, 213 So.2d 679, and Gamble v. State, 48 Ala. App. 605,266 So.2d 817.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.
 *Page 1